Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

### for the

### District of Massachusetts

| | |
|---|---|
| **CAMERON LACROIX** | ) Case No. _25-cv-13452-MPK_ |
| _____ | ) *(To be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) Jury Trial: *(check one)* **(X)** Yes' No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| y | ) |
| **BRETT LEATHERMAN, TED E. DOCKS, et.** | ) |
| **al.** | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

## AMENDED COMPLAINT FOR A CIVIL CASE

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | CAMERON LACROIX |
| Job or Title | Pro Se Litigant |
| Street Address City | PO Box 620144, Newton |
| and County State | Middlesex, MA |
| and Zip Code | 02462 |
| Telephone Number | 617-539-6662 |
| E-mail Address | cameronlacroix@proton.me |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 5

**Defendant No. 1**

| | |
|---|---|
| Name | <u>BRETT LEATHERMAN</u> |
| Job or Title | <u>Assistant Director of FBI Cyber Division</u> |
| Street Address City | <u>935 Pennsylvania Ave NW, Washington</u> |
| and County State | <u>District of Columbia</u> |
| and Zip Code | <u>20535</u> |
| Telephone Number | <u>202-324-3000</u> |
| E-mail Address | <u>UNKNOWN</u> |

**Defendant No. 2**

| | |
|---|---|
| Name | <u>TED E. DOCKS</u> |
| Job or Title *(if known)* | <u>Special Agent in Charge of FBI Boston</u> |
| Street Address City | <u>201 Maple St, Chelsea</u> |
| and County State | <u>Suffolk, MA</u> |
| and Zip Code | <u>02150</u> |
| Telephone Number | <u>857-386-2000</u> |
| E-mail Address | UNKNOWN |

**Defendant No. 3**

| | |
|---|---|
| Name | KIMBERLY MILKA |
| Job or Title *(if known)* | <u>Assistant Special Agent in Charge of FBI Boston</u> |
| Street Address City | <u>201 Maple St, Chelsea</u> |
| and County State | <u>Suffolk, MA</u> |
| and Zip Code | <u>02150</u> |
| Telephone Number | <u>857-386-2000</u> |
| E-mail Address | UNKNOWN |

**Defendant No. 4**

| | |
|---|---|
| Name | ANDREW BAILEY |
| Job or Title *(if known)* | <u>Co-Deputy Director, FBI</u> |

|                      |                                    |
|----------------------|------------------------------------|
| Street Address City  | 935 Pennsylvania Ave NW, Washington |
| and County State     | District of Columbia               |
| and Zip Code         | 20535                              |
| Telephone Number     | 202-324-3000                       |
| E-mail Address       | UNKNOWN                            |

**Defendant No. 5**

|                      |                              |
|----------------------|------------------------------|
| Name                 | UNKNOWN DEFENDANT AGENTS      |
| Job or Title *(if known)* | UNKNOWN                  |
| Street Address City  | UNKNOWN                      |
| and County State     | UNKNOWN, MA                  |
| and Zip Code         | UNKNOWN                      |
| Telephone Number     | UNKNOWN                      |
| E-mail Address       | UNKNOWN                      |

**Defendant No. 6**

|                      |                                        |
|----------------------|----------------------------------------|
| Name                 | UNDERCOVER AGENT 1 ("UCE-1") aka B.M.   |
| Job or Title *(if known)* | Special Agent                     |
| Street Address City  | UNKNOWN                                |
| and County State     | UNKNOWN, MA                            |
| and Zip Code         | UNKNOWN                                |
| Telephone Number     | UNKNOWN                                |
| E-mail Address       | UNKNOWN                                |

**Defendant No. 7**

|                      |                              |
|----------------------|------------------------------|
| Name                 | UNNAMED DEFENDANT AGENTS.     |
| Job or Title *(if known)* | UNKNOWN                  |
| Street Address City  | UNKNOWN                      |
| and County State     | UNKNOWN, MA                  |
| and Zip Code         | UNKNOWN                      |
| Telephone Number     | UNKNOWN                      |

**Defendant No. 8**

| | |
|---|---|
| Name | AGENT-1 (COUNT 7) |
| Job or Title *(if known)* | Special Agent |
| Street Address City | UNKNOWN |
| and County State | UNKNOWN, MA |
| and Zip Code | UNKNOWN |
| Telephone Number | UNKNOWN |
| E-mail Address | UNKNOWN |

**Defendant No. 9**

| | |
|---|---|
| Name | AGENT-2 (COUNT 7) |
| Job or Title *(if known)* | Special Agent |
| Street Address City | UNKNOWN |
| and County State | UNKNOWN, MA |
| and Zip Code | UNKNOWN |
| Telephone Number | UNKNOWN |
| E-mail Address | UNKNOWN |

**Defendant No. 10**

| | |
|---|---|
| Name | AGENT-3 (COUNT 7) |
| Job or Title *(if known)* | Special Agent |
| Street Address City | UNKNOWN |
| and County State | UNKNOWN, MA |
| and Zip Code | UNKNOWN |
| Telephone Number | UNKNOWN |
| E-mail Address | UNKNOWN |

**Defendant No. 11**

| | |
|---|---|
| Name | AGENT-4 (COUNT 8) |
| Job or Title *(if known)* | Special Agent |

| | |
|---|---|
| Street Address City | <u>UNKNOWN</u> |
| and County State | <u>UNKNOWN, MA</u> |
| and Zip Code | <u>UNKNOWN</u> |
| Telephone Number | <u>UNKNOWN</u> |
| E-mail Address | UNKNOWN |

**Defendant No. 12**

| | |
|---|---|
| Name | AGENT-5 (COUNT 8) |
| Job or Title *(if known)* | <u>Special Agent</u> |
| Street Address City | <u>UNKNOWN</u> |
| and County State | <u>UNKNOWN, MA</u> |
| and Zip Code | <u>UNKNOWN</u> |
| Telephone Number | <u>UNKNOWN</u> |
| E-mail Address | UNKNOWN |

**Defendant No. 13**

| | |
|---|---|
| Name | UNDERCOVER AGENT 2 ("UCE-2") aka JOE. |
| Job or Title *(if known)* | <u>Special Agent</u> |
| Street Address City | <u>UNKNOWN</u> |
| and County State | <u>UNKNOWN, MA</u> |
| and Zip Code | <u>UNKNOWN</u> |
| Telephone Number | <u>UNKNOWN</u> |
| E-mail Address | UNKNOWN |

**Defendant No. 14**

| | |
|---|---|
| Name | UNDERCOVER AGENT 3 ("UCE-3") aka R.M. |
| Job or Title *(if known)* | <u>Special Agent</u> |
| Street Address City | <u>UNKNOWN</u> |
| and County State | <u>UNKNOWN, MA</u> |
| and Zip Code | <u>UNKNOWN</u> |
| Telephone Number | <u>UNKNOWN</u> |

E-mail Address          UNKNOWN

**Defendant No. 15**

Name                    DAVID G. NANZ

Job or Title *(if known)*   <u>Assistant Director of Operational Technology Division</u>

Street Address City     <u>935 Pennsylvania Ave NW, Washington</u>

and County State        <u>District of Columbia</u>

and Zip Code            <u>20535</u>

Telephone Number        <u>202-324-3000</u>

E-mail Address          UNKNOWN

---

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(Check all that apply)*

    **X** Federal question          ' Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

<u>4th Amendment (Unlawful Search & Seizure)</u>

<u>5th Amendment (Self Incrimination)</u>

<u>6th Amendment (Right to Fair & Impartial Trial)</u>

<u>8th Amendment (Cruel & Unusual Punishment)</u>

<u>14th Amendment (Due Process)</u>

<u>Title VII Civil Rights Violations & the ADA</u>

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship (N/A)

1.The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the

State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated

under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.   If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of

the State of *(name)* _____ . Or is a citizen of

*(Foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated und

the laws of the State of *(name)* _____ , and has it

principal place of business in the State of *(name)* _____

Or is incorporated under the laws of *(foreign nation)* _____

and has its principal place of business in *(name)* __

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## COMPLAINT

Plaintiff Cameron Lacroix brings this Complaint seeking damages against Defendants for carrying out psychological warfare against him and taking steps to advance an undercover mission at the expense of his mental health. Dozens of agents have participated in various events to include computer hacking, harassment, evidence planting, and stalking. Furthermore, Plaintiff asserts that the federal agents utilized at least one confidential human source to gain insight into his mental state rather than utilize legal processes for protected material under HIPAA. Defendants are charged in their individual capacities for violating Plaintiff's constitutional rights and these allegations should not be considered under the Federal Tort Claims Act. Plaintiff's tort claims were mailed on November 23, 2025 and those claims will be raised after the passage of 6 months or their denials.

## RESIDENCE OF PLAINTIFF

For all purposes the Plaintiff lived with his family at 680 Worcester Street Apt 101 in Wellesley, MA from April 1, 2025 until November 7, 2025. Plaintiff's spouse moved out around September 16, 2025. Plaintiff now resides at 270 Grove Street Apt 6 in Auburndale, MA and his spouse resides elsewhere.

## ALLEGATIONS

1.  The Federal Bureau of Investigation is aware of the fact that Plaintiff has a history of mental health issues and is currently involved in treatment as he's been under constant physical surveillance. In 2014 the Plaintiff agreed to provide his presentence investigation report ("PSR") to the FBI's Behavioral Analysis Unit ("BAU") synonymous with his conviction on various computer offenses *(see United States v. Lacroix, 14-CR-10162-MLW, District of Massachusetts)*. The PSR informed the Court and FBI that he struggled with anxiety, depression, and substance abuse. During this time Plaintiff engaged in a very serious criminal act by repeatedly hacking into law enforcement servers to determine whether he was under investigation *(see PSR pg. 5 at 12-13)*. The document authored by U.S. Probation also noted Plaintiff's admission that substances made him so paranoid that he thought law enforcement officials were following him *(see PSR pg. 20 at 75)*.

2.  Plaintiff has reviewed a public copy of the Attorney General's Guidelines on FBI Undercover ("UC") Operations dated May 30, 2002. The first step under Section IV discussing the authorization of UC operations states that "Any official considering approval or authorization of a proposed undercover operation…"," shall weigh", and "The risk of personal injury to individuals". Plaintiff asserts that these guidelines were not followed and Government agents acted negligently and in bad faith to not consider any risk to Plaintiff's mental health when working on the operations' application.

3.  For the last few months federal agents have taken steps to break, pressure, and provoke Plaintiff by authorizing invasive, intensive, and obvious physical surveillance. The Government's risky techniques nearly emulated the scenario from 2012 which cost the Plaintiff a psychotic episode resulting in his admission into the Emergency Room. Plaintiff prays that the Court hold Defendants accountable for negligently authorizing and engaging in an undercover operation designed to compromise his wellbeing. Finally, Plaintiff charges that the Government's actions led Plaintiff into believing that his liberty was restricted at certain points in time as there have been more than 50 agents surveilling him at one location and while travelling on road.

4.  Plaintiff mentions that the Government is trying to destroy his life. In this unusual case Plaintiff claims that unknown agents hacked Plaintiff's wireless network over the summer and intruded into his apartment which both contributed to the breakdown of the relationship between he and his wife. He has been harassed, insulted, and intimidated just days after he mentioned this suit on social media. The Plaintiff's mental health issues were in remission until the discovery of some of the Government's hacking and intensive physical surveillance.

5.  On May 31, 2025 Plaintiff reached out to Wellesley Police to request information pertaining to an arrest made by Wellesley Police concerning UCE-3 also known by the initials R.M. This individual resided at 680 Worcester Street in Wellesley, MA on the same floor as Plaintiff. Plaintiff became concerned that this individual might be violent or a

sexual predator due to the types of questions he asked Plaintiff and his daughter S.J. For example, UCE-3 engaged Plaintiff asking inappropriate questions such as whether or not he lived in subsidized housing, his job, and if his spouse was Chinese.

6. On July 5, 2025 Plaintiff sent an e-mail to the U.S. Attorney's Media representative for the District of Massachusetts requesting the removal of a 2019 press release concerning a supervised release violation which appeared to be prejudicial *(See https://www.justice.gov/usao-ma/pr/recidivist-hacker-sentenced-violating-supervised-release-conditions)*. Plaintiff's e-mail noted that hiring managers mistakenly believed that he had an additional conviction which caused him to be passed up for several jobs and at least two apartments (apartments not cited in e-mail). Plaintiff sent the e-mail from his student e-mail account with Western Governors University. He also sent an e-mail directly to the U.S. Attorney for the District of Massachusetts and assistant to ensure the request was reviewed.

7. On a date between June 15, 2025 and August 31, 2025 Plaintiff was at his residence located at 680 Worcester Street and entered the lobby. Plaintiff observed a bank card placed in the center of a table and picked it up to read the name. Plaintiff placed it back on the table. Plaintiff believes this was a scheme to entice or entrap Plaintiff by unknown Government agents.

8. On August 13, 2025 Plaintiff commuted to work using the Wellesley Square Commuter Rail. Upon arriving at South Station, he exited the terminal and rented a bicycle using the fob on his key chain at 1:37 PM. At 6:11 PM Plaintiff realized that his keys were missing from his desk area. Plaintiff was able to rent a bike at 8:53 PM to get home using an app as the fob was no longer in his possession.

9. On August 14, 2025 Plaintiff retrieved his keys from the Lost and Found at the South Station Terminal. Plaintiff was told that a conductor found his keys on one of the trolleys which was unusual because he had to use his keys in order to rent a bicycle.

10. On August 30, 2025 Plaintiff received an e-mail from Google indicating that his Gmail account had a suspicious login attempt which was unexpected.

11. On August 31, 2025 Plaintiff discovered that a sophisticated rootkit had been installed on a computer in his household.

12. On September 4, 2025 at 5:36 PM Plaintiff contacted Western Governors University's IT Department by phone to report an inability to access his school's account and Gmail. Plaintiff now knows that he was not able to sign-in to his account due to an advanced law enforcement technique which restricted some features of the web browser. For example, Plaintiff was not able to utilize the Incognito browser which ensures cookie files are not retained. Plaintiff was eventually able to sign-in after not using the Incognito (private browser) and believes the malware did this deliberately so it could capture keystrokes. This malware also negatively influenced the social media feed of Plaintiff's LinkedIn account and caused it to inflict psychological damage to Plaintiff.

13. On September 5, 2025 Plaintiff received an e-mail from X.com indicating that his social media account was accessed from another device which was unexpected.

14. On September 6, 2025 Plaintiff e-mailed his mentor at Western Governors University asking about the possibility of Two Factor Authentication being added to his student account. Plaintiff reported that a computer in the household was infected with a rootkit ~~and he was concerned about his credentials being stolen. Plaintiff also noticed that~~


see next page

rootkit and he was concerned about his credentials being stolen. Plaintiff also noticed that his school's Google Account had been restricted where his free space had been reduced to zero.

15. On September 14, 2025 Plaintiff interacted with two individuals that were moving out of 680 Worcester Street Unit 104 in Wellesley, MA. and observed all of their belongings being taken out by movers. Plaintiff spoke with a white male that was with an Asian female who appeared to be occupants or designated owners of the unit. The male told Plaintiff they only stayed there for about three months and were indeed leaving.

16. On September 14, 2025 Plaintiff self-reported to the Newton-Wellesley Hospital's Emergency Room and was evaluated for symptoms of anxiety and psychosis. Plaintiff was accompanied by his spouse ("K.P." previously known as "I.P.") and his church pastor ("M.M."). Once admitted only his wife remained. Plaintiff saw multiple members of medical personnel and reported that he thought people were following him and worried that he'd be killed. At some point a man not wearing medical attire seized Plaintiff's bookbag and was told that it would be searched in another location. After several hours Plaintiff had stabilized and released due to not posing a danger to himself or others. Plaintiff was recommended to follow up with his provider and also look into services provided at Newton-Wellesley Hospital. Plaintiff's bag was later returned to him.

17. On September 15, 2025 Plaintiff believed that there may have been an unauthorized sign-in attempt made into his LinkedIn account based on login history.

18. On September 16, 2025 Plaintiff saw Nurse Practitioner Daisy S. at Boston Medical Center for symptoms of anxiety, depression, and schizophrenia. Plaintiff was evaluated and prescribed Effexor which treats symptoms of anxiety and depression based on a family member's success with it. The Nurse Practitioner said she was concerned about the schizophrenia diagnosis and processed a referral for psychiatry. She said that they would be the ones best equipped to support him.

19. On September 20, 2025 Plaintiff logged into his household's wireless router provided by Xfinity and discovered two unauthorized devices accessed the network using the correct password a month earlier. On August 4, 2025 an unknown individual used a computer to access Plaintiff's wireless network without authorization. This computer identified itself using a local hostname of DESKTOP-JJK5S8E with a network MAC address of 104A7D0F4E70. On August 15, 2025 an unknown individual used a computer to access Plaintiff's wireless network without authorization. This computer identified itself using a local hostname of DESKTOP-T1KP1AQ with a network MAC address of 68342123FB63. According to macvendor.com both of these MAC addresses were manufactured by Intel Corporation and the Xfinity Gateway reported that each machine was running the Windows 10 operating system. Plaintiff believes all Defendants are responsible as well as unknown agents whom physically operated the computers.

20. On September 21, 2025 Plaintiff tried to follow up with an OIG complaint concerning a negative DOJ press release using his e-mail account at Western Governors University. Plaintiff's e-mail bounced back with a message indicating that he was restricted from communicating with the OIG's domain ("usdoj.gov") e-mail address.

21. On September 22, 2025 Plaintiff reached out to his landlord asking if he could have a printout showing who had accessed their unit based on the key fob swipes. Their maintenance tech known by the initials D.D. told plaintiff he would provide them via a

telephone call. Plaintiff reached out to D.D. via e-mail asking for the logs and was instead told that they would only provide it to law enforcement upon request. Plaintiff became increasing suspicious that his neighbors had something to do with the unauthorized entry due to limitations on how far his wi-fi could broadcast a signal. Plaintiff recalled leaving his apartment sometime after sending the e-mail and noticed that nearly every car in his parking garage had vanished which was unusual.

22. On September 23, 2025 or slightly earlier Plaintiff received a targeted e-mail from an unknown hotmail.com account with the following message: "I am out of bathbombs. I will take $40 with please. At your convenience. Thank you, Margaret Smith,". Plaintiff does not know this individual and based on the Plaintiff's recent understandings believes that this may have been an attempt to place incriminating e-mails into the Plaintiff's mailbox. Plaintiff believes an unnamed agent of an unknown agency committed this act in order to manufacture evidence and advance an investigation.

23. On September 24, 2025 Plaintiff posted to social media mentioning that internet capable devices in his household were hacked with malware which had the ability to manipulate his social media feeds to display negative news, transfer files, and enable session hijacking. Two members from Amazon Web Services viewed Plaintiff's LinkedIn profile within a day of this post as well as several in other unknown departments also at Amazon.

24. On September 24, 2025 Plaintiff received a connection request from a man known by the initials D.N. who is a graduate of Western Governors University and involved in their ambassador program. D.N.'s profile indicates he is based out of New York and has an interested in the FBI Cyber Division page.

25. On September 24, 2025 unknown federal agents deployed a cell site simulator which interfered with Plaintiff's ability to seek out treatment pursuant to the Emergency Room's guidance. Plaintiff attempted to call the Newton-Wellesley Hospital's Substance Use Disorder clinic but the call continuously cut out multiple times. Plaintiff was only able to speak with a provider, known as Jasmine, without interruption by using Google Voice which relies on data rather than cellular routing. On October 29, 2025 the Plaintiff complained to Mint Mobile about constant interruptions to his service when placing calls close from his residence. The representative mentioned that others were having issues in the area and to rectify their tech team would try updating the software on the tower. The representative informed him that tower was very close and was found to be a repeater affixed to a utility pole directly in front of 680 Worcester Street in Wellesley, MA (Plaintiff's residence at the time).

26. On September 30, 2025 Plaintiff advised his property manager that he could no longer manage paying the rent on his own as he and his wife were physically separated. Plaintiff requested to be out by November 1, 2025 but our property manager said it would be dependent on whether or not they could secure a new tenant. On October 28, 2025 Plaintiff's property manager said that they could not find someone and we would have to pay for November and now wait until December 1, 2025. Plaintiff experienced emotional and financial distress as he learned that other tenants such as Unit 104 and Unit 105 were allowed to vacate without finding replacements. Plaintiff now believes that he was likely denied exiting the lease because of pressure from Government agents running the undercover operation.

27. On October 6, 2025 Plaintiff listed a $200 Best Buy Gift Card on eBay obtained through a trade-in opportunity.

28. On October 7, 2025 Plaintiff was informed that the gift card had been purchased by a man residing in New York. Plaintiff received an eBay message from a separate account not associated with the purchase asking for the card number. Out of an abundance of caution and worrying that devices may still be hacked, Plaintiff cancelled the sale and refunded the payment.

29. On October 7, 2025 Plaintiff attended an appointment with his Primary Care Physician Dr. Jonathan B. at Boston Medical Center. Plaintiff was seen for symptoms of anxiety, depression, and schizophrenia. Plaintiff was evaluated and had his medication changed to Bupropion due to negative effects while on Effexor. Plaintiff's Primary Care Physician inquired about the psychiatry referral and thought it would be helpful for his mental health. He submitted a second referral for their Integrated Behavioral Health ("IBH") team which might be able to see him much sooner.

30. On October 12, 2025 Plaintiff asked Western Governors University's IT department about the space restrictions placed onto his Google Account which were noticed a month earlier. Plaintiff was told that this was unusual and that they would look into it.

31. On October 15, 2025 Plaintiff was told by Western Governors University's IT department to not worry about needing to use Google services and to rather use OneDrive instead. Plaintiff's support ticket was resolved.

32. On October 20, 2025 Plaintiff met with his Primary Care Physician Dr. Jonathan B. via a tele-med appointment. Plaintiff reported some progress with the medication but felt it was wearing off. Plaintiff's medication was increased to a higher dose. Plaintiff had not heard from any member of psychiatry and his physician said he would reach out to their management to get the ball rolling.

33. On October 27, 2025 Plaintiff met with a member of the IBH team at Boston Medical Center and completed an intake. Plaintiff's enrollment in IBH was in response to his complex mental health conditions and Plaintiff has been holding on to discussing core issues until this point. Plaintiff believes that the Government will try to manufacture additional evidence based on to the trauma he's experienced.

34. On November 3, 2025, the Plaintiff introduced himself to a man who identified himself as JOE ("UCE-2"). UCE-2 had been sitting in a white Toyota truck that was idling in Plaintiff's apartment's parking lot. Plaintiff asserts that this is an undercover agent participating in the investigation and conspiracy to injure plaintiff's mental health. Plaintiff asked UCE-2 which building he lived in to which he pointed at a building across the compound. Plaintiff asked what his building number was but he could not provide it. UCE-2 told Plaintiff that he should be careful because Plaintiff's neighbor was "weird". UCE-2 further said Plaintiff's neighbor was selling sexual homosexual services and this statement was intended to trigger Plaintiff's anxiety, depression, and make him uncomfortable.

35. On November 4, 2025, the Plaintiff's birthday, unknown defendant agents of the Government surveilled him so intensely that he could not go for a walk on a hiking path in Wellesley, MA without agents walking or running by him constantly. Plaintiff later walked by a believed surveillance agent and observed what looked like a text conversation on their iPhone. Plaintiff reportedly saw a photo taken of someone that he believes to have been him. Plaintiff became extremely anxious and felt like he was being stalked.

36. On November 8, 2025 Plaintiff communicated with a convicted computer hacker and known FBI Confidential Human Source ("CHS-1") on LinkedIn. During the course of the conversation Plaintiff express that he had known about J.H.'s cooperator status and was not judging him for it to ensure there was comfort in the conversation. CHS-1 and Plaintiff communicated with Plaintiff about a myriad of topics which included Plaintiff asking if the government plants evidence on people which led to CHS-1 answering that the "feds never liked you". Given CHS-1's unique status as a previous cooperator, his knowledge of the feds not having a favorable view of Plaintiff is telling. Finally, CHS-1 specifically asked Plaintiff which medications had he been on. Plaintiff believes CHS-1 was likely acting on behalf of an unknown defendant agent.

37. On November 8, 2025 Plaintiff was at his current residence at in Auburndale, MA and overheard a telephone conversation between a presumed undercover employee ("UCE-1") who goes by a name bearing the initials of "B.M.". UCE-1 resides in the same apartment building as Plaintiff. To Plaintiff's understanding, UCE-1 discussed the organizing of an undercover operation against an individual that he had been working to get for about five years. UCE-1 admitted that he had f***ed up the case and said that it happens sometimes. He stated that he "forgot to put that in there", suggesting that something went unreported. It appeared that the unidentified party had asked a question to UCE-1 in responding that "it hasn't happened yet but it's coming". UCE-1 further went on to explain that that a team would be arriving in the area to handle the clean-up and that everything will be in place when the person UCE-1 was speaking to arrives. UCE-1 stated that there were approximately $6,000 worth of funds remaining in the bank account for expenses and he recommended using the nearby Marriot hotel as needed. UCE-1 indicated that they were going to have to collect all of his issued firearms from him. Plaintiff believes he was talking about retiring. UCE-1 also told the unidentified party that he's provided a new coat every year because they work outside and said that they could take some of them from him if he/she wanted.

38. On November 9, 2025 Plaintiff entered a Star Market in Auburndale MA to obtain a drink after his vehicle broke down after a misfire. Between the hours of 1200-1300 Plaintiff traveled down an aisle and was met by an unknown agent conducting surveillance. The agent was a slightly taller white male wearing glasses and white air buds. The agent allegedly told Plaintiff "We're coming to get you, we're wherever you are". Plaintiff shouted, "why?" but the individual continued walking. Plaintiff purchased a sports drink at self-checkout and walked back to his vehicle.

39. On November 9, 2025 Plaintiff interacted with multiple neighbors in his building to ask if anyone knew if someone had entered his new apartment while he was not home. Plaintiff eventually knocked on the door of UCE-1 located in Unit 2. UCE-1 opened the door surprised and Plaintiff introduced himself. A moment later the male tenant living in Unit 4 exited his room to join the conversation. Plaintiff mentioned that whoever accessed his unit did not take anything and he thinks it happened due to markings on the wall that he had not noticed before. UCE-1 indicated that he knows professionals that execute covert break ins and they would never do something like that. Plaintiff out of curiosity asked like who and he mentioned law enforcement. UCE-1 later joked that the property manager should charge $500 less per month if the building is not secure and persons can enter using old keys for example. UCE-1 asked Plaintiff if he had any valuables in his unit to which he

responded no and that the most valuable asset might be his work laptop that was untouched. UCE-1 said that he had many firearms in his apartment. Plaintiff asked him if he really had guns and UCE-1 responded excitingly "Yes, do you like them?". Plaintiff said no and added that he was not able to have one because of a felony conviction. UCE-1 told Plaintiff that he has a relative down in Florida who was a federal prosecutor and could help him out. UCE-1 went on to tell Plaintiff" I can make your federal problems go away". Plaintiff chuckled and said no thanks. Plaintiff was also told by UCE-1 that he will introduce him to the neighbors living there this summer. Plaintiff read this to mean that he may be apprehended around that time and felt that UCE-1 was trying to entrap him when asked about removing "federal problems". Plaintiff did not mention any federal problems.

40. On November 10, 2025 Plaintiff began drafting this lawsuit at the Boston Public Library at 700 Boylston St in Boston, MA. The Plaintiff noticed two men nearby were staring at him and were probably doing surveillance. Both male individuals were positioned near the windows closest to Computer#13 in the lab area. Agent-1was a white male and both were within an earshot's distance. Plaintiff clearly heard Agent-1 tell Agent-2 "I hope he doesn't start yelling when I search him, ha". This comment was made deliberately to trigger Plaintiff's anxiety and induce panic. Agent-1 and Agent-2 discussed the fact that Plaintiff had not posted anything to Instagram yet, suggesting that they were directly aware of Plaintiff's announcement on another social media platform where he said that he was going to file a lawsuit against the Government.

41. On November 10, 2025 Plaintiff logged off the computer as the library was preparing to close and went to look for books of interest. The Plaintiff was stalked by Agent-1 and a different female agent referred to as Agent-3. Agent-1 and Agent-3 furtively followed Plaintiff around the library in an obvious manner, trans versing from the first floor up to the third floor, in and around several aisles. Plaintiff looked behind him several times and each time both Agents would look away from him or immediately stop walking. At some point they stopped and the Plaintiff ended up behind both agents in an effort to continue looking for any interesting categories. As Agent-1 announced an intention to search Plaintiff but no search took place, this close and obvious surveillance was performed to solely stalk and harass him.

42. On November 12, 2025 Plaintiff asserts that unknown agents conspired to plant evidence in a rideshare vehicle to further their investigation. Plaintiff commuted to the Kelly Infiniti dealership in Danvers, MA to pick up his repaired vehicle. Plaintiff commuted using the MBTA's green line, red line, and commuter rail services. Upon arriving at the Commuter Rail Station in Beverly, MA the Plaintiff had requested a Lyft. His cell phone indicated that Agent-4 aka "JOSE" had accepted his request and would arrive in a 2014 Subaru Outback. Plaintiff observed Agent-4's vehicle prior to him being picked up and noticed a woman exit his vehicle using the rear passenger side door. Agent-4's vehicle pulled up against the sidewalk around the corner which influenced the Plaintiff to use the rear passenger side door, where a woman had been sitting. While in-transit, Plaintiff took a photo of a Toyota sedan that passed his Lyft who he believes is likely a female agent conducting surveillance. This individual is referred to as Agent-5. At some point during the ride Plaintiff noticed some items in the door's slot to his right and discovered that there were numerous receipts, papers, and packaging pertaining to American Express Prepaid Gift Cards. The receipts indicated that there were two prepaid

cards and that they were each loaded with $500.00 at the Cumberland Farms in South Hadley, MA. The receipt noted that the load commenced on 10/28/2025. Plaintiff confronted the driver who seemingly could not provide any detail as to who had just exited his vehicle and mentioned that he had a prior criminal conviction related to fraudulent gift cards as such. Plaintiff repeatedly asked the driver if he knew anything as to why there would coincidentally be gift cards in a car he had gotten into. Agent-4 responded negatively. Plaintiff asked Agent-4 how long he had been driving and he said 2 months, however the Lyft app only mentioned that he had been driving for one. Plaintiff believes that his Lyft travel was observed by surveillance agents and one specific female, believed to be an agent, was seen driving a Toyota sedan out of the window. Upon exiting the vehicle, Plaintiff engaged Officer Robert Sullivan (Badge# 989) who also was coincidentally was at the Plaintiff's drop off point, Kelly Infiniti in Danvers, and the two discussed the matter that had transpired.

43. On November 18, 2025 Plaintiff left a friend's house where he had been working on this civil suit to avoid interruption and harassment in public. Upon exiting the residence plaintiff noticed a blue Hyundai sedan with a veteran plate drive down the street prior to Plaintiff getting into his car and the driver was looking at him. The blue Hyundai parked a block away, in front of another vehicle. This block is an open field so it was visible to Plaintiff. In his return home, he had to travel by the Hyundai and saw that both vehicles consisted of men in the driver seat, one wearing a baseball cap and hooded sweatshirt. Both males stared at Plaintiff as he drove by.

## COUNT 1 - FALSE IMPRISONMENT, ARREST, and ILLEGAL DETENTION | FOURTH AMENDMENT

Plaintiff re-alleges the allegations in paragraphs from 1 - 44.

Plaintiff does not feel that he is free to travel as he pleases as there is virtually no privacy no matter where he seems to go while out in public. Plaintiff is under tight physical surveillance everywhere to include in his home, car, and even within the waiting rooms for each medical appointment.

Plaintiff states at a minimum that he was restricted from freedom and liberty on November 4, 2025, November 10, 2025, and November 12, 2025.

Plaintiff has gone for walks and felt confined to specific areas. Plaintiff was also harassed by multiple agents during the course of the events described.

## COUNT 2 – ILLEGAL SEARCH AND SEIZURE due to HACKING of WIRELESS NETWORK | FOURTH AMENDMENT

1. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

2. Plaintiff discovered that two individual computers had logged on to his household's wireless network without authorization. Plaintiff's network was password protected

and the password was not provided to non-family members. Logs were retrieved from the Xfinity Gateway proving that the access did indeed take place by the two computers alleged in the complaint.

3. Plaintiff further believes that undercover agents resided at his previous apartment in Wellesley, MA as his property manager effectively stonewalled the attempt to learn if someone had entered his unit and pressured him to remain a tenant for as long as possible.

4. Plaintiff believes that unknown Defendant agents were the actors after overhearing UCE-1 talk about the undercover operation.

5. Plaintiff asserts that this was not carried out in good faith as the Government was negligent as evidence was relatively easy to obtain. Furthermore, the Plaintiff suffered anxiety and mental distress due to this intrusion.

## COUNT 3 – ILLEGAL SEARCH AND SEIZURE VIA OF CELL SITE SIMULATOR | FOURTH, FIFTH, AND EIGHTH AMENDMENT

6. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

7. Plaintiff experienced difficulty in placing an outbound call for medical services on September 24, 2025 causing him anxiety and emotional distress. After connecting, the Plaintiff could no longer hear the staff's voice after a short while. This led to issues understanding what the provider was asking Plaintiff.

8. Plaintiff moved to another room and called back Google Voice which relies on a data session rather than cellular without issue.

9. Plaintiff received device alerts about the possibility of his phone connecting to an IMSI cell site simulator on October 7, 2025 and October 10, 2025 following a device upgrade.

10. Plaintiff believes unknown Defendant agents are responsible.

## COUNT 4 – RETALIATORY PROSECUTION | FIFTH, SIXTH, and FOURTEENTH AMENDMENT

11. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

12. Plaintiff points out that many of the events occurred after Plaintiff's initial escalation to the U.S. Attorney's Office via e-mail on July 5, 2025 and later to the Office of Inspector General.

13. Plaintiff also reached out to the U.S. Attorney known by her initials L.F. to ensure that the prejudice resulting from the article would not go unheard.

14. Plaintiff charges that Defendants known and unknown are retaliating against him and ramped up an investigation based on vindictive reasons.

## COUNT 5 – ILLEGAL SEARCH AND SEIZURE due to HACKING of CELLULAR TELEPHONE | FOURTH AMENDMENT

15. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

16. On between August 30, 2025 and September 4, 2025 a cellular telephone used by Plaintiff was being controlled by malicious software installed by unknown Defendant agents or an external partner acting at the behest of unknown Defendant agents.

17. The malware interfered with the Plaintiff's usage of ordinary web browsing and forced him to login using less secure means.

18. The malware activated the Plaintiff's microphone and captured audio without authorization.

19. The malware altered the social media feed of his LinkedIn account to display negative stories such as employees hating their jobs and an individual being sentenced to prison for SIM swapping.

20. Plaintiff discovered that his device settings had been altered to permit the sharing of keystrokes between his device's Personal and Work profiles. This type of monitoring is invasive as it captures all keystrokes not limited to specific applications.

21. Plaintiff discovered that information from the cellular phone was being exfiltrated to a server without authorization.

22. Plaintiff experienced severe emotional distress and anxiety as a result of this intrusion.

## COUNT 6 – STALKING & HARASSMENT | Title VII Civil Right Act, American with Disabilities Act, Fourth Amendment

23. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

24. On November 9, 2025 the Plaintiff entered a Star Market in Auburndale, Massachusetts to purchase a drink.

25. Plaintiff travelled down an aisle and made eye contact with a tall man wearing glasses and what appeared to be air pods. The man referred to as UNKNOWN AGENT #2 told Plaintiff "We're coming to get you, we're wherever you are".

26. Plaintiff responded "why?" and UNKNOWN AGENT #2 walked away.

27. Plaintiff was effectively harassed for no reason other than to exploit his mental illness and instill feelings of anxiety and paranoia.

28. Plaintiff effectively felt seized in the moment as he was told by law enforcement that he is not going anywhere without the Government's presence.

## COUNT 7 – HARASSMENT, ILLEGAL DETENTION | Title VII Civil Right Act, American with Disabilities Act, Fourth Amendment, Fourteenth Amendment

29. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

30. Plaintiff announced on his social media account that he would be preparing a lawsuit against the Government. On November 10, 2025 he began working on it using the computer lab at the Boston Public Library located at 700 Boylston St in Boston, MA.

31. Plaintiff asserts that two male agents positioned themselves near the windows closest to Computer #13 where Plaintiff was seated. Plaintiff heard AGENT-1 tell AGENT-2 "I hope he doesn't start yelling when I search him, ha".

32. AGENT-1 also told AGENT-2 "I don't see anything posted on his Instagram yet", suggesting that they were monitoring his social media profiles which noted the lawsuit.

33. Plaintiff experienced emotional distress, anxiety, depression, and paranoia after hearing this comment. Plaintiff was also never searched which supports the notion that this was pure harassment. Plaintiff also avoided going to the restroom for as long as possible because of fear of an illegal detention for preparing the civil case.

## COUNT 8 – OBSTRUCTION OF JUSTICE / PLANTING EVIDENCE | Title VII Civil Right Act, American with Disabilities Act, Fourth, Fifth, Sixth, and Fourteenth Amendment

34. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

35. Plaintiff asserts that on November 12, 2025 that AGENT-4 operating a 2014 Subaru Outback bearing MA tag 4TEH62 through Lyft picked up Plaintiff on his way to pick up his car in Beverly, MA.

36. Plaintiff asserts that he was under surveillance from the moment he left his residence in Auburndale until he arrived in Danvers, using multiple trains, and finally his entire journey from the Beverly, MA in an effort to harass and stalk him. Plaintiff saw a female agent who was familiar to him surveilling his travel in the Lyft. She is known as AGENT-5 and was driving a Toyota sedan with MA tag 5PHD44

37. Plaintiff asserts that AGENT-4, AGENT-5, and others unknown conspired to plant evidence and associate it with Plaintiff by placing the packaging of 2 prepaid American Express Gift Cards in the back seat of his ride share, worth more than $1,000.

38. Upon Plaintiff's arrival at Kelly Infiniti, his final destination, there was a Danvers Police Officer parked directly in front of where Agent-4 dropped him off. Plaintiff approached the officer and informed him about what he found in the car and that he had a criminal history directly related to these types of cards.

39. The ordeal was captured on video and neither party objected to the Plaintiff recording.

40. Plaintiff experienced extreme stress from this situation and cannot utilize any ride share without significant emotional distress. Plaintiff suffered anxiety and panic attacks.

## COUNT 9 – ILLEGAL SEARCH AND SEIZURE - USING CI to CIRCUMVENT LEGAL PROCESS | Fourth and Fourteenth Amendment

41. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

42. Plaintiff asserts that an FBI CHS engaged him on LinkedIn on November 8, 2025.

43. Plaintiff learned that he was the subject of an undercover mission hours later.

44. Plaintiff believes that J.H. was acting at the direction of unknown agent(s) seeking information about Plaintiff's mental history rather than utilizing legal process to obtain protected HIPAA materials.

## COUNT 10 – ILLEGAL SEARCH AND SEIZURE – AMAZON ACCOUNT HISTORY|

**Fourth Amendment**

1. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

2. Plaintiff asserts that an FBI CHS known as J.H. engaged him on LinkedIn on November 8, 2025, at the direction of unknown agent(s).

3. Plaintiff states that J.H. suggested that he obtain a Raspberry Pi to setup an encrypted VPN to protect himself from being hacked.

4. Plaintiff coincidentally had a Raspberry Pi which was purchased from Amazon in September that was later returned.

5. Plaintiff believes that the Government obtained his Amazon purchase history contrary to legal process between September 8, 2025 and November 8, 2025.

## COUNT 11 – HARASSMENT, STALKING, | Title VII Civil Right Act, American with Disabilities Act, Fourth Amendment, Fourteenth Amendment

1. Plaintiff re-alleges the allegations in paragraphs 1 - 44.

2. Plaintiff asserts that an undercover agent ("UCE-2") purposefully relayed information to him to trigger his mental health condition to cause emotional distress and trigger his anxiety.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff requests a temporary restraining order against Defendants prohibiting all involved federal agents and their use of third parties from conducting any form of physical surveillance or undercover operation which may jeopardize his mental health. Physical surveillance shall include any person, walking, running, biking, or driving within an area that the Plaintiff himself can see or physically access.

Plaintiff also requests that the Government immediately cease the act of having drone's follow Plaintiff as he has observed them constantly for the last two weeks.

The Plaintiff at a later time prays for a preliminary injunction barring the government from repeating any similar surveillance practice itself or through a third party for the remainder of the Plaintiff's life unless Plaintiff is determined to no longer to be prone to depression, anxiety, and psychosis.

The Plaintiff seeks $1,000,000.00 for the emotional distress and damage done to his mental health. Plaintiff took several weeks off from work for rest and had to extend it to seek professional treatment following the discovery of the alleged hacking by the Government.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:
11/23/2025

Signature of Plaintiff

Printed Name of Plaintiff

Cameron LaCroix

### B.    For Attorneys

**N/A**

Print    Save As...    Add Attachment    Reset

To whom it may concern,

25-cv-13452

This video (on the flash drive) depicts the interaction

between myself and the Lyft driver where

planted evidence was located.

(Agent-4 in Count 8)

Thank you,

C L                11/23/25

FILED
IN CLERK'S OFFICE
2025 NOV 24  AM 9: 21
U.S. DISTRICT COURT
DISTRICT OF MASS.