UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMERON LACROIX<br><br>    Plaintiff,<br><br>    v.<br><br>BRETT E. LEATHERMAN, Assistant Director of FBI Cyber Division, TED E. DOCKS, Special Agent In Charge of FBI Boston, KIMBERLY MILKA, Assistant Special Agent In Charge of FBI Boston, ANDREW BAILEY, Co-Deputy Director of FBI, UNKNOWN DEFENDANT AGENTS, Special Agent of Other Agency/Task Force Officer, UNDERCOVER AGENT 1 ("UCE-1") aka B.M., Special Agent, UNNAMED DEFENDANT AGENTS, Special Agents, FBI, AGENT-1 (cited in COUNT 7) , Special Agent, AGENT-2 (cited in COUNT 7), Special Agent, AGENT-3 (cited in COUNT 7), Special Agent, AGENT-4 (cited in COUNT 8), Special Agent,  AGENT-5 (cited in COUNT 8), Special Agent, UNDERCOVER AGENT 2 ("UCE-2") aka JOE, Special Agent, UNDERCOVER AGENT 3 ("UCE-3") aka R.M., Special Agent, DAVID G. NANZ, Assistant Director of FBI Operational Technology Division, and UNDERCOVER AGENT 4 ("UCE-4") aka Philippe, Special Agent<br>    Defendants. | Civil Action No. 25-cv-13452-ADB |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants, Andrew T. Bailey, FBI Co-Deputy Director; Brett E. Leatherman, Assistant Director, Cyber Division; David Nanz, Assistant Director, Operational Technology Division; Ted E. Docks, Special Agent in Charge, Boston Division; and Kimberly Milka, Assistant Special Agent in Charge, Boston Division (together "Named Defendants"); by and though their attorney Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this

Memorandum of Law in support of their Motion to Dismiss pro se Plaintiff Cameron Lacroix ("Plaintiff")'s Second Amended Complaint, (ECF Doc. 16), in its entirely and with prejudice.

The Complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

On November 19, 2025, Plaintiff filed his original complaint against namely five supervisory officials of the FBI (the "Named Defendants"), as well as eleven unnamed "agents" and "undercover agents." Plaintiff filed an amended complaint on November 24, 2025. On December 24, 2025, Plaintiff filed a second Amended Complaint ("Complaint"), to which Defendants now respond.

The instant Complaint is summarized in Plaintiff's Statement of Claim:

> Plaintiff Cameron Lacroix brings this Complaint seeking damages against Defendants for carrying out psychological warfare against him and taking steps to advance an undercover mission at the expense of his mental health. Dozens of agents have participated in various events including computer hacking, harassment, evidence planting, and stalking. Furthermore, Plaintiff asserts that the federal agents utilized multiple confidential informants throughout a multi-year investigation based on false pretenses.

Complaint (ECF Doc. 16 at 5).

In the section of the Complaint titled "Basis for Jurisdiction" Plaintiff states that he brings this suit against the Named Defendants in their individual capacities under *Bivens*. (ECF Doc. 16 at 4.)

Plaintiff admits to suffering from ongoing and serious mental health issues and to having been diagnosed with anxiety, depression and schizophrenia. (ECF Doc. 16 ¶ 138). Plaintiff reports multiple trips to the hospital for his severe mental health issues. For instance, he states that on September 14, 2025, he self-reported to Newton-Wellesley Hospital's Emergency Room for symptoms of anxiety and psychosis, where he told members of the medical personnel that "he

thought people were following him and worried that he'd be killed." (ECF Doc. 16 ¶ 69). Plaintiff states that he suffered a mental breakdown on September 15, 2025, falsely accusing his wife of being a spy. (ECF Doc. 16 ¶ 73). He was then seen at the Boston Medical Center for symptoms of anxiety, depression and schizophrenia. (ECF Doc. 16 ¶ 74). He claims that "the Government has Plaintiff under multiple investigations, and they are using these as a pretense to sabotage his mental health." (ECF Doc. 16 ¶ 156).

Over the course of 152 paragraphs of allegations in the Complaint, Plaintiff claims that federal agents engaged in "invasive, intensive, and obvious physical surveillance" of him, (ECF Doc. 16 ¶ 3), and that the government was "trying to destroy his life." (ECF Doc. 16 ¶ 4).

Plaintiff refers to multiple unnamed individuals whom he calls unnamed undercover agents ("UCE")'s, without providing any explanation for why he believed them to be undercover agents working for the federal government, and whom he claims are behind a multitude of nefarious acts. Just a few examples are as follows. Plaintiff states that on April 13, 2025, while he "cannot substantiate the claim that the Government caused" his cell service to be reduced to 2G/EDGE service, he "notes that Government utilized cell site simulators have the ability to intercept the content of calls and texts while operating on the 2G protocol." (ECF Doc. 16 ¶ 24). Another example: Plaintiff states that on July 15, 2025, that he went to the Boston federal courthouse and noticed a man named Philippe whom he calls "UCE-4," and "Plaintiff alleges that Philippe was there to monitor Plaintiff and keep track of their location while Government agents made illegal entry into Plaintiff's home and/or tampered with his phone." (ECF Doc. 16 ¶ 34). Plaintiff also alleges that on July 25, 2025, a fire alarm off in his home while he was at work and "During this time, Plaintiff believes that the Government made unauthorized entry into his home to tamper with electronic devices." (ECF Doc. 16 ¶ 36). Yet another example is Plaintiff's unsubstantiated

allegation that on August 15, 2025, that an UNKNOWN DEFENDANT AGENT had accessed his wireless network without authorization. (ECF Doc. 16 ¶ 50).

Plaintiff brings 19 counts, claiming various violations of the Fourth Amendment, Fifth Amendment, Eight Amendment, Sixth Amendment, Fourteenth Amendment, the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328, 42 U.S.C. §§ 12101 *et seq.,* as amended ("ADA"), and Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII").  (ECF Doc. 16 at 25-32).

The Court should dismiss the Complaint with prejudice. First the Court lacks subject matter jurisdiction because Plaintiff's allegations, which amount to conspiracy theories about the government stalking him and constantly surveilling him in order to sabotage his mental health, are too insubstantial to support federal jurisdiction.

Second, the Complaint fails to provide the "short and plain statement" required by Rule 8 and it should be dismissed for failure to state a claim under Rule 12(b)(6). Furthermore, if Plaintiffs' claims of constitutional violations are to be construed as *Bivens* claims, they fail to state a claim, as is the case with his claims under the ADA and Title VII. Finally, because Plaintiff has already amended his complaint two times and any further amendment would be futile, dismissal should be with prejudice.

## LEGAL STANDARDS

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

A district court should dismiss claims under Fed. R. Civ. P. 12(b)(1) when it lacks subject matter jurisdiction to decide them. "In ruling on a motion to dismiss for lack of jurisdiction, 'the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff.'" *Excel Home Care, Inc. v. U.S. Dep't of*

4

*Health & Human Servs.*, 316 B.R. 565, 568 (D. Mass. 2004) (citation omitted). But "[t]hat is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis." *Id.*

    **B.**    **Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.**

    A district court should dismiss claims under Fed. R. Civ. P. 12(b)(6) when the underlying allegations fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard invites a two-step pavane." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* A district court should thus dismiss a claim "if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). This requires a plaintiff to plead "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pro se plaintiff's complaint is to be construed liberally but, like any other complaint, it must nevertheless contain factual assertions sufficient to support a facially plausible claim for relief. *Id.*

**ARGUMENT**

A. **This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Under the Substantiality Doctrine**

Under the substantiality doctrine, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly insubstantial,' or 'no longer open to discussion.'" *Hagans v. Lavine*, 415 U.S. 528, 536-537 (1974).

The First Circuit has recognized the substantiality doctrine. In the per curiam decision of *Veale v. Penuche's Ale House*, 2000 WL 293785 (1st Cir. March 13, 2000), the Court upheld the district court's dismissal of the complaint on the ground of the substantiality doctrine (citing *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1181-1182 (7th Cir. 1989) (stating that "[a]t the first tier of review, the district court must assess the substantiality of the constitutional or federal statutory allegations of the complaint to determine whether . . . they are 'wholly insubstantial and frivolous" and if so, the complaint must be dismissed for want of subject matter jurisdiction). *See also Molina-Crespo v. Califano*, 583 F.2d 572, 574 (1st Cir. 1978) ("The 'substantiality doctrine' is a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims," *quoting Hagans, supra*, 415 U.S. at 538.)

Moreover, in evaluating a complaint against a public officer, the Court should give effect to the presumption of regularity of official action. *United States v. Chem. Found., Inc*., 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

Plaintiff's claims here fall under the substantiality doctrine. Plaintiff brings 19 claims against the Named Defendants (five supervisory officials of the FBI), as well as eleven unnamed

6

"agents" and "undercover agents," under the Fourth Amendment, Fifth Amendment, Eight Amendment, Sixth Amendment, Fourteenth Amendment, the American with Disabilities Act, and Title VII of the Civil Rights Act. Plaintiff appears to allege a conspiracy among many federal government agents to follow him and to stalk and harass him to destroy his mental state. This is the type of implausible conspiracy theory that courts around the country have held to be too insubstantial to support federal jurisdiction. *See., e.g., Ou-Young v. Rudy*, 2022 WL 2343043, at *3-4 (N.D. Cal. June 29, 2022) (collecting cases); *Walsh v. Hagee*, 900 F.Supp.2d 51, 58 (D.D.C. 2012) (collecting cases).

### B. The Complaint Fails to State a Claim

Even if the Court decided to exercise jurisdiction over this case, the Complaint should be dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6). First, the Complaint fails to make "a short and plain statement . . . showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a). Second, even construing the pro se Complaint liberally as asserting *Bivens* claims against the Named Defendants, any such *Bivens* claims fail.

#### 1. The Complaint Fails to Meet the Minimum Pleading Requirements of Rule 8

Rule 8(a) requires, at a minimum, that the complaint "give the defendant fair notice of what the plaintiff's claim is, and the grounds upon which it rests." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004)). This means that the statement of the claim must "at least set forth minimal facts as to who did what to whom, when, where, and why." *Id.* (quoting *Educadores*, 367 F.3d at 68). Although the requirements of Rule 8(a)(2) are minimal, "minimal requirements are not tantamount to nonexistent requirements." *Id.* (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)).

7

Further, the factual allegations must describe specific actions. The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court is not "bound to accept as true a legal conclusion couched as a factual allegation," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting in part *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[O]nly a complaint that states a *plausible* claim for relief" states a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not show that "the pleader is entitled to relief." *Id.* (quoting Fed. R Civ. P. 8(a)(2) in second quotation).

In this case, although Plaintiff names five supervisory FBI personnel, he makes no specific allegation with respect to any of the Named Defendants.[1] Instead, virtually all of Plaintiff's allegations against the government are directed at unnamed FBI "undercover agents" or FBI agents. He also makes a number of allegations against his co-workers at Amazon but does not name any of them as defendants.

Lack of clarity and specificity permeate the Complaint, which falls short of the requirements of Federal Rule of Civil Procedure 8. Therefore, the Court should dismiss the case under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

   2. **Any *Bivens* Claims Fail**

---

[1] Although Plaintiff states that he is suing the Named Defendants in their individual capacity, it appears they are being named because of their positions as supervisory employees. However, there is no vicarious liability under *Bivens*. *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011).

As noted in the Complaint, Plaintiff alleges that he brings this suit against the Named Defendants in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (ECF Doc. 16 at 5).[2] But Plaintiff's *Bivens* claims fail because they arise in a new context that is "meaningfully different" from the facts in the three Supreme Court cases recognizing a *Bivens* remedy, and because "'special factors' counsel[] against extending *Bivens*" to this case. *See Quinones-Pimentel v. Cannon*, 85 F.4th 63, 69-70 (1st Cir. 2023).

Plaintiff alleges in the Complaint that the defendants, including the Named Defendants, are "carrying out psychological warfare against him and taking steps to advance an undercover mission at the expense of his mental health," that "[d]ozens of agents have participated in various events including computer hacking, harassment, evidence planting, and stalking; and that "the federal agents utilized multiple confidential informants throughout a multi-year investigation based on false pretenses." (ECF Doc. 16 at 5).

These allegations do not assert a cognizable *Bivens* claim because this would require the Court to expand the scope of *Bivens* relief, which the Supreme Court disfavors. *See Quinones-Pimentel*, 85 F.4th at 69 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).

---

[2] In his prayer for relief (ECF Doc. 16 at 32), Plaintiff requests both monetary damages and injunctive relief. However, *Bivens* only provides a basis for potential monetary damages against federal officials in their individual capacities; injunctive relief is not available under *Bivens*. *Hulsey v. Fed. Bureau of Prisons*, 2020 WL 5634318, at *2 (D. Mass. Sept. 21, 2020). Furthermore, there is no basis for suing federal officials for injunctive relief in their individual capacities. *Davidson v. U.S. Dept. of State*, 113 F.Supp.3d 183, 194 (D.D.C. 2015), *aff'd,* 728 F.App'x 7 (D.C. Cir. 2018).

In *Bivens*, the "Supreme Court 'held that a Fourth Amendment violation by federal agents, acting under color of governmental authority, gave rise to [an implied] cause of action for money damages against those agents in their individual capacities.'" *Quinones-Pimentel*, 85 F.4th at 68–69 (quoting *González v. Vélez*, 864 F.3d 45, 52 (1st Cir. 2017)). "There, 'federal agents . . . allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations.'" *Quinones-Pimentel*, 85 F.4th at 68 (quoting *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022)).

Since deciding *Bivens* more than fifty years ago, the Supreme Court has "substantially narrowed" its application "to a small category of cases—indeed almost to the vanishing point." *Ortega v. U.S. Customs & Border Prot.*, 657 F. Supp. 3d 186, 188 (D. Mass. 2023). Indeed, the Supreme Court has since extended *Bivens* only to two additional contexts: (1) "a damages action pursuant to the Fifth Amendment's Equal Protection Clause against a Congressperson for sex discrimination towards a member of their staff," *Quinones-Pimentel*, 85 F.4th at 69 (citing *Davis v. Passman*, 442 U.S. 228, 229–31, 248–49 (1979)); and (2) "an Eighth Amendment violation in which federal prison officials failed to provide adequate medical treatment for a prisoner's asthma, resulting in his death," *Quinones-Pimentel*, 85 F.4th at 69 (citing *Carlson v. Green*, 446 U.S. 14, 16, 20-23 (1980)).

"*Bivens* itself is still good law." *Arias v. Herzon*, 150 F.4th 27, 33 (1st Cir. 2025). However, since deciding *Davis* and *Carlson*, "the Supreme Court has charted a significantly different path, consistently refusing 'to extend the *Bivens* doctrine to new settings.'" *Quinones-Pimentel*, 85 F.4th at 69 (quoting *González*, 864 F.3d at 52). Instead, the Supreme Court has "observed 'that expanding the *Bivens* remedy is now a disfavored activity[.]'" *Quinones-Pimentel*, 85 F.4th at 69 (quoting *Abbasi*, 582 U.S. at 135). "This hesitance stems from the Supreme Court's

recognition that 'it is a significant step under separation-of-powers principles for a court to determine that it [as opposed to Congress] has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation.'" *Quinones-Pimentel*, 85 F.4th at 69 (quoting *Abbasi*, 582 U.S. at 133).

The narrowing of *Bivens* culminated in the Supreme Court's decision in *Egbert* in which the Court—for the first time ever—declined to allow a Fourth Amendment *Bivens* remedy against a line-level law enforcement officer who allegedly assaulted a United States citizen on his own property. *See generally Egbert v. Boule*, 142 S. Ct. 1793 (2022). In fact, *Egbert* was one of "a recent trio" of Supreme Court cases in which the Court "observed 'that expanding the *Bivens* remedy is now a disfavored judicial activity'"; that *Bivens* was the product "of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated"; and that if "there is a rational reason to think that [Congress rather than the courts is who should decide whether to provide a damages remedy]—as it will be in most every case, . . . no *Bivens* action may lie[.]" *Quinones-Pimentel*, 85 F.4th at 69 (quoting *Abbasi*, 582 U.S. at 135; *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020); *Egbert*, 142 S. Ct. at 1803). Thus, "it is doubtful that a plaintiff may seek damages under the Fourth Amendment against federal law enforcement officers under a cause of action that a court would have to create." *Arias*, 150 F.4th at 33. "But a plaintiff may do so pursuant to the cause of action that the Court recognized in *Bivens*." *Id*.

Accordingly, to determine whether Plaintiff's claim falls under the cause of action "recognized in *Bivens*," this Court must first consider whether Plaintiff's claim "presents a new *Bivens* context, which boils down to whether the case is meaningfully different from *Bivens*, *Davis* and *Carlson*." *Quinones-Pimentel*, 85 F.4th at 69. If Plaintiff's claim "does present a new *Bivens*

context," then the Court must consider "whether there are any 'special factors' counseling against extending *Bivens*" to this case. *Id*. at 70 (quoting *Egbert*, 142 S. Ct. at 1803). Such "special factors" include "'alternative remedial structures,' such that if Congress has already given a would-be *Bivens* plaintiff a way to redress the constitutional violation, the *Bivens* suit cannot proceed." *Id*. at 70 (quoting *Egbert*, 142 S. Ct. at 1804). "The absence of any special factors means '*Bivens*' relief is available, while the presence of special factors means such relief is unavailable." *Id*.

Here, Plaintiff's *Bivens* claim bears virtually no relation to the facts of *Bivens*. Accordingly, Plaintiff's *Bivens* claim fails because it presents a new *Bivens* context and special factors counsel against extending *Bivens* here.

    a.  **Plaintiff's Claim Arises in a New Context**

Plaintiff's claim arises in a "new" *Bivens* context because it is meaningfully different from the facts of *Bivens* itself. The facts in *Bivens* "involved a Fourth Amendment claim against federal line-level investigative officers who allegedly entered and searched the plaintiff's apartment, arrested him for alleged drug violations, manacled him in front of his family, threatened to arrest his family, and later interrogated, booked, and visually strip searched him—all without probable cause or a warrant and with excessive force." *Quinones-Pimentel*, 85 F.4th at 71 (citing *Bivens*, 403 U.S. at 389).

Plaintiff alleges nothing of the sort here. Instead, the most Plaintiff alleges, without basis, is that the defendants, including the Named Defendants, were involved in a conspiracy to destroy his mental health by stalking, surveilling, and sabotaging him. Unlike in *Bivens*, Plaintiff does not allege warrantless entry and search of his home, let alone unlawful arrest and excessive force. Accordingly, Plaintiff's *Bivens* claim arises in a new context. *See Quinones-Pimentel*, 85 F.4th at 71 (concluding that a *Bivens* claim presented a new context where, among other things, "no one

was handcuffed or arrested and no one's home nor their person (naked or otherwise) was searched without a warrant"). [3]

b. **Special Factors Militate Against Expanding *Bivens* Here**

Moreover, "'special factors counsel[] hesitation' in extending *Bivens*" to the facts of this case. *See Quinones-Pimentel*, 85 F.4th at 74 (quoting *Abbasi*, 582 U.S. at 136). "'[E]ven a single reason to pause before applying *Bivens* in a new context' is sufficient to preclude relief, because 'in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id*. (quoting *Egbert*, 596 U.S. at 491). This analysis "in most every case" should lead to the same result: "no *Bivens* action may lie." *Egbert*, 596 U.S. at 492. Here, reasons abound to "pause before applying *Bivens*" in this case, notably the existence of "'alternative remedial structures,' as set forth below.

i. **Existing Grievance and Investigative Mechanisms Counsel Against Extending *Bivens***

Congress already has provided a process to address allegations of misconduct by employees of the Department of Justice (which includes employees of the FBI) and thereby deter such misconduct. Through the Inspector General Act of 1978, as amended, Congress instructed the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress in turn authorized the Department's Inspector General, as appropriate, to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of

---

[3] Although Plaintiff in the instant case alleges Fifth and Eighth Amendment violations, his allegations are entirely distinguishable from the factual scenarios of *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980)).

the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department. *Id.* § 8E(b)(2).

In legislating, Congress placed no limitations on who may report allegations of wrongdoing. *See generally id.* Accordingly, any person, including Plaintiff, may report such alleged misconduct. Indeed, the Department's Office of the Inspector General (OIG) provides a link on its public website to report allegations of wrongdoing. *See* U.S. Dep't of Justice, Office of the Inspector General, *Hotline*, oig.justice.gov/hotline. Upon receiving such allegations, OIG generally either opens its own investigation or, as appropriate, refers the allegations to the Office of Professional Responsibility or the internal affairs office of the relevant Department component. Any findings by OIG regarding allegations of misconduct are then provided to the appropriate component for any remedial or disciplinary steps.

The existence of a congressionally authorized investigatory process, as implemented by the Executive Branch, is an alternative counseling against this Court implying a damages remedy. *See Egbert*, 596 U.S. at 498 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy").

Moreover, the federal government has internal processes for disciplining employee misconduct. FBI employees, like Defendant, as Department employees "have a duty to, and shall, report . . . waste, fraud, or abuse," as well as "serious administrative misconduct" by other FBI employees. 28 C.F.R. § 45.11(a) & (b). Violations can lead to "corrective or disciplinary action" by the agency. 5 C.F.R. § 2635.106.

The grievance and investigation procedures described above are, as *Egbert* underscores, reason alone to hesitate before recognizing a *Bivens* remedy. That remains true irrespective of whether Plaintiff here ever filed a grievance, or any investigation was conducted, related to his allegations. Indeed, *Egbert* instructs that even an allegedly "inadequate" grievance process can "independently" foreclose *Bivens* relief from a federal law enforcement officer. *Egbert*, 596 U.S. at 498. That is because the relevant "focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring." *Id*. (quotations omitted). Here, as in *Egbert*, such safeguards plainly exist.

### ii. 31 U.S.C. § 3724 Provides an Alternative Remedial Statute

Still another alternative remedial structure provided by Congress is a statutory remedy through which the Department of Justice "may settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under [the Federal Tort Claims Act]." 31 U.S.C. § 3724(a); *see Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (finding 31 U.S.C. § 3724 was an alternative scheme counseling against *Bivens* remedy). Through this provision, Congress has provided a statutory damages remedy for claims involving the loss of or damage to person or property caused by federal law enforcement officers in the line of duty. Accordingly, Congress created a mechanism to recover monetary compensation for certain damages arising from the category of conduct at issue here, and so "an alternative remedial structure" is "in place." *Egbert*, 596 U.S. at 493 (quotations omitted).

### iii. The Federal Tort Claims Act ("FTCA") is an Alternative Remedial Structure That Counsels Hesitation

Finally, the FTCA is another "alternative remedial structure," through which "Congress already has provided" a damages remedy for torts committed by federal employees in the scope of employment. *Egbert*, 596 U.S. at 493 (quotations omitted); *see* 28 U.S.C. §§ 2679,1346.[4] Three years after *Bivens* was decided, Congress specifically amended the FTCA to allow for claims of certain intentional torts arising out of the "acts or omissions of investigative or law enforcement officers of the United States." 28 U.S.C. § 2680(h). Through the FTCA, "Congress has provided alternative remedies for aggrieved parties in [Plaintiff's] position," which is enough to "independently foreclose a *Bivens* action here." *Egbert*, 596 U.S. at 497.

Accordingly, Plaintiff's *Bivens* claims against the Named Defendants fail to state a claim against them.

### c. The Named Defendants Are Entitled to Qualified Immunity

In any event, the Named Defendants have qualified immunity from Plaintiff's suit. Qualified immunity bars suit against a government official unless "(1) the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether such right was clearly

---

[4] While 42 years ago, in *Carlson*, the Supreme Court found that the FTCA did not foreclose *Bivens* relief (in a case of deliberate indifference to medical needs resulting in an inmate's death) because Congress did not "explicitly declare[] [the FTCA] to be a *substitute* for recovery directly under the Constitution and viewed as equally effective," *see Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (emphasis in original), the Supreme Court clarified in *Egbert* that such reasoning "carries little weight because it predates [the Supreme Court's] current approach to implied causes of action and diverges from the prevailing framework in three important ways," *see Egbert*, 596 U.S. at 501-502.

Namely, now (1) even the absence of any relief does not counsel that an implied damages remedy should be created; (2) courts should defer to Congress so long as the design of a statutory scheme "suggests that Congress has provided what it considers adequate remedial mechanisms"; and (3) the focus of the special factors inquiry is whether "there are sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy at all." *Id*. (quotations omitted).

established at the time of the defendant's alleged violation." *Barton v. Clancy,* 632 F.3d 9, 21-22 (1st Cir. 2011). "[Q]ualified immunity against personal liability exists even for constitutional mistakes and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Solis-Alarcón*, 662 F.3d at 581 (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)).

In the present case, all of the Named Defendants are entitled to qualified immunity, as Plaintiff has failed to allege any specific conduct by any one of them that constitutes a violation of his constitutional rights. Thus, the claims fail at the first step of the qualified immunity analysis. *See, e.g., Gonzalez v. Otero*, 172 F.Supp.3d 477, 507 (D.P.R. 2016) ("Though Plaintiffs allege violations of protected rights under the First, Fourth, Fifth, and Fourteenth Amendments, this Court fails to find the factual basis to support these allegations and thus the first step of the qualified immunity analysis falters.")

### 3. The ADA and Title VII Claims Fail to State a Claim

It is not clear to what extent Plaintiff intends to bring ADA and Title VII claims against the Named Defendants. In any event, both claims clearly fail to state a claim.

Plaintiff does not indicate under what section of the ADA he intends to bring a claim but he may be attempting to sue under Title II, which prohibits discrimination against a qualified individual with a disability regarding a public entity's "services, programs, or activities." 42 U.S.C. § 12132. However, the ADA does not provide for suits against the federal government or federal officials. *Feliciano-Hill v. Principi*, 439 F.3d 18, 22 n. 1 (1st Cir. 2006). Title II of the ADA prohibits disability discrimination only by instrumentalities of state and local governments. *See* 42 U.S.C. § 12131(1) (defining "public entity" under ADA to include "any State or local government" and "any department, agency, special purpose district or other instrumentality of a State or States or local government").

17

As to Plaintiff's Title VII claims, the primary objective of Title VII is to bring employment discrimination to an end. *Ford Motor Co. v. E.E.O.C.*, 102 S.Ct. 3057, 3063 (1982). Plaintiff alleges that he was employed by Amazon, not the FBI, so there is no factual basis for a Title VII claim against Named Defendants, who are FBI employees. In any case, there is no individual liability under Title VII. *See Fantini v. Salem State College*, 557 F.3d 22, 28-31 (1st Cir. 2009).

### 4. The Court Should Dismiss with Prejudice

Finally, the Complaint cannot be cured by amendment, and therefore it should be dismissed with prejudice. Plaintiff has already amended his complaint twice and the second amended Complaint still remains subject to the many deficiencies described above. Plaintiff cannot remedy the fact that the court lacks subject matter jurisdiction under the substantiality doctrine, and all of his claims fail to state a claim under *Bivens* or otherwise.[5]

---

[5] If the Court were to construe the Complaint as including claims against the Named Defendants in their official capacities, those claims would in effect be against the United States, so sovereign immunity would be implicated, *McCloskey v. Mueller*, 446 F.3d 262, 271-272 (1st Cir. 2006), and the court would still lack subject matter jurisdiction under the substantiality doctrine. Furthermore, there is no *Bivens* remedy against the United States, *FDIC v. Meyer*, 510 U.S. 471 (1994), no waiver of sovereign immunity under the ADA, *Feliciano-Hill, supra*, and no basis for a Title VII claim where the Plaintiff does not allege federal employment.

## CONCLUSION

For the foregoing reasons, the Named Defendants respectfully request that the Court dismiss the Complaint with prejudice and instruct the Clerk to close the case.

                                                  Respectfully submitted,

                                                  LEAH B. FOLEY
                                                  United States Attorney

Dated: March 2, 2026                    By:    */s/ Shawna Yen*
                                                     Shawna Yen
                                                     Assistant United States Attorney
                                                   United States Attorney's Office
                                                   1 Courthouse Way, Suite 9200
                                                   Boston, MA 02210
                                                   Tel.: 617-748-3100
                                                   Email: Shawna.Yen@usdoj.gov

## CERTIFICATE OF SERVICE

I, Shawna Yen, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants.

Dated: March 2, 2026                    By:    */s/ Shawna Yen*
                                                     Shawna Yen
                                                   Assistant United States Attorney